1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUFUS GRAY,<br><br>                                    Petitioner,<br><br>                    vs.<br><br>M. CATE, et al.,<br><br>                                    Respondents. | Civil No.          09-0709 BEN (CAB)<br><br>**REPORT AND RECOMMENDATION RE: DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

**I.    INTRODUCTION**

Petitioner Rufus Gray, a state prisoner proceeding pro se, has filed a Second Amended Petition for Writ of Habeas Corpus (Pet.) pursuant to 28 U.S.C. § 2254, challenging his convictions in San Diego County Superior Court case number SCD189135 for two counts of carjacking, two counts of robbery, one count of attempted kidnaping, one count of kidnaping for the purpose of robbery and one count of kidnaping.  (Pet. at 6-7, ECF No. 12; Lodgment No. 2, vol. 2 at 0250-58.)[1]  The jury found true several firearm related enhancements as well as an enhancement related to the victims' status as a taxi driver. (Lodgment No. 2, vol. 2 at 0250-58.)  The petition presents six claims.  (*See* Pet. at 6-7, ECF No. 12.)

This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(d)(4) for Proposed Findings of Fact and Recommendation for Disposition.  For the reasons set forth below, the Court respectfully recommends that the Petition be **DENIED**.

/ / /

---

[1]  For ease of reference, the Court will use the page numbers assigned by the Court's electronic filing system.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal's opinion denying Gray's direct appeal of his convictions.

### 1. *The prosecution case*

In the early morning hours of September 8, 2004, Abdullahi Allaso was driving his Yellow Cab Company taxi cab. At around 2:00 a.m., Allaso picked up two African-American men near the intersection of 36th and University Street in the North Park area of San Diego. Allaso considered one of the men to be "short," and the other man to be "tall." The men told Allaso to take them to Park Boulevard and gave him $20 in advance.

Both men got in the back seat of the cab. Allaso then drove the men to a park near Adams Avenue and stopped the car. After Allaso stopped the car, the short man pulled out a gun, pointed it at Allaso, and ordered Allaso to give the money back. As this was happening, the tall man reached from the back seat and put Allaso in a choke hold. Allaso gave the short man the $20 that the men had given him earlier, and also gave the man money from his pocket, which amounted to approximately $80 or $90.

The short man then took the car keys from Allaso. He exited the car, walked around to the driver's side window, and told Allaso to get out of the car. Allaso got out of the car. The short man pointed the gun at Allaso, opened the trunk, and told Allaso to get in. Allaso refused to get into the trunk. The short man asked Allaso if he wanted to die, and Allaso responded that he would "die definitely" if he got inside the trunk. The short man then punched Allaso with his free hand. Allaso punched the man back, and as the man leaned back, he fired a shot that Allaso believed hit a nearby house.

The short man told Allaso to give him the money that was in Allaso's pocket. Allaso took his wallet out of his pocket and threw it on the ground. The short man picked up the wallet and started running down the street. While this was going on, the tall man had gotten out of the cab and taken the keys from the short man. As the short man ran down the street, the tall man got into the cab and started driving. He picked up the shorter man, and the two of them drove off together.

At around 2:00 a.m. on September 8, 2004, Nicholi Coronado woke up and heard someone yelling. Coronado looked out his apartment window and saw a cab parked on the street directly outside his apartment. Coronado saw an individual "trying to put the cab driver inside the trunk while another person was trying to start the car." All three of the individuals Coronado witnessed as being involved in the incident had "dark comple[xions]" consistent with "an African or African-American complexion." Coronado witnessed what he called a "scuffle" between the cab driver and another man, and heard and saw "fire, like a gunshot," after one of the men fell to the ground. After seeing and hearing the gunshot, Coronado shut the curtain because he did not want to be seen. He heard the cab's engine start and could tell that the cab had been driven away.

After the cab drove away, Coronado heard the cab driver scream and try to run after the car.

In response to a call about shots being fired on the 1900 block of Carmelina, where Coronado lived, Edward Lynch, a police officer with the San Diego Police Department, arrived at the scene shortly after 2:00 a.m. on September 8, 2004. Allaso approached Officer Lynch and told Lynch that he had "been robbed of his taxi cab." Allaso appeared "visibly scared" and was "rambling" and "yelling . . . out of desperation and afraid of the incident that had just occurred." Approximately 15 minutes after Officer Lynch arrived, he received information that a cab matching the description of the one stolen from Allaso had been located nearby. At around 2:15 a.m. that morning, Michael Kincaid, an off-duty San Diego police officer, had arrived at his North Park residence and saw an empty yellow taxi cab parked in his assigned parking spot. Officer Kincaid called dispatch to have an officer come out and "take a look" at the cab. Dispatch called him back and told him that the cab "had been part of an armed robbery."

At around 4:00 a.m. that same morning, Olusola Maraiyesa was driving his Yellow Cab Company taxi cab in the North Park area. As Maraiyesa was driving east on El Cajon Boulevard, he was flagged down by "two guys, one short, one guy, one tall" at the corner of El Cajon Boulevard and 42nd Street. The taller man had a bandana on his head and was wearing dark jeans and a long sleeved shirt. The shorter man was wearing a white shirt and what Maraiyesa believed were "black pants or something." Maraiyesa described the shorter man as being approximately 5' 5" tall and "a little bit thick set" or "[a] little bit bulky." The man's hair was cut very short. At trial, Maraiyesa identified Gray as the shorter man.

Maraiyesa pulled over and Gray opened the front passenger door. Gray told Maraiyesa that they wanted to go to the Spring Street trolley station, which is located in La Mesa. Gray showed Maraiyesa a $20 to indicate that they had money to pay for the trip. Maraiyesa told Gray to hold onto the money until after he drove them to their destination. Gray got into the front passenger seat, and the taller man got into the back seat.

Maraiyesa drove the men to the Spring Street trolley station. When they arrived at the station, the men told Maraiyesa that they were "going further down, that the trolley station was only a description of the area" to which they were going. The men eventually directed Maraiyesa to a park in La Mesa. The drive had taken approximately 20 minutes; it was around 4:20 a.m. when they reached the park.

At the park, Gray pulled out a gun, pointed it at Maraiyesa, and told Maraiyesa to give him everything Maraiyesa had in his possession, including his money and wallet. As this was happening, the man in the back seat "held" Maraiyesa "by the throat," using his arm. Maraiyesa removed an estimated $200 from the visor above his seat and gave it to Gray. Maraiyesa also took his wallet out of his pocket and gave that to Gray. Gray then ordered Maraiyesa to get out of the cab and told Maraiyesa that if Maraiyesa ran, Gray would shoot him. Maraiyesa complied and stood by the car door. Gray got out of the passenger side door and walked around the cab to where Maraiyesa was standing. Gray ordered Maraiyesa to the back of the car and told him to open the trunk. Maraiyesa informed Gray that he had to open the trunk from inside the cab. Maraiyesa then walked back to the driver's side door and opened the trunk. Gray ordered Maraiyesa to get inside the trunk. Maraiyesa climbed inside the trunk, and Gray closed it. Maraiyesa could not open the trunk from the inside.

Someone drove the cab around with Maraiyesa in the trunk, but Maraiyesa did not know who was driving. He also did not know how long he was driven around while

in the trunk. At one point, the car stopped and both men opened the trunk and asked Maraiyesa for his personal identification number (PIN). Maraiyesa gave them the PIN for his Wells Fargo check card. The men came back to ask Maraiyesa about other cards. He told them that the other cards were credit cards for which he did not know the PINs because he did not use them to get cash.

The men used Maraiyesa's Wells Fargo check card to make a number of unauthorized withdrawals from his bank account. Maraiyesa had over $1000 in the account before this occurred. After the unauthorized transactions, his account was overdrawn by $444.

At some point, Maraiyesa noticed that the cab had been stopped for a prolonged period of time; Maraiyesa estimated that it was about 20-25 minutes. Gray opened the trunk, said "are you still there" to Maraiyesa, and then slammed the trunk closed.

Sometime after that, Maraiyesa heard someone knocking on the car. Maraiyesa started banging on the inside of the trunk. David Winans, an officer with the San Diego Police Department, had noticed an unoccupied cab with its engine running behind the police storefront building at 3636 University Avenue. Officer Winans walked around the cab and heard "some knocking coming from the trunk." Winans leaned over the trunk and said, "[H]ello." He then heard Maraiyesa screaming for help and saying that he had been robbed. Maraiyesa said something about a "trunk release." Winans went to the driver's side of the vehicle and opened the trunk. Maraiyesa estimated that the entire ordeal, from the robbery in the park to the time he was let out of the trunk, lasted approximately three hours.

Later that day, a field evidence technician examined the two cabs for fingerprints, inside a secure police warehouse. The technician lifted 29 latent prints from Allaso's cab and six latent prints from Maraiyesa's cab. A latent fingerprint examiner found Gray's left ring finger and right thumb prints on the exterior of the front passenger side door of Allaso's cab. The fingerprint examiner found a fingerprint from Gray's left ring finger on the frame of the driver's side-view mirror and also found Gray's left palm print on the trunk of Maraiyesa's cab.

### 2. *The defense*

Gray called Geary McMurray, a criminal defense investigator, to testify. McMurray interviewed Allaso on October 12, 2005. During that interview, Allaso described the men who robbed him. McMurray showed Allaso a photographic lineup, which did not include a photographs of Gray. Allaso identified the individual in photograph number 4 as the man who shot the gun and ordered Allaso to get into the trunk of his cab. Allaso identified the individual in photograph number 10 as the other man involved in the crime.

(Lodgment No. 6 at 3-8.)

## III.   PROCEDURAL BACKGROUND

On October 11, 2005, the San Diego County District Attorney filed an amended information (information) charging Rufus Gray, Jr. (Gray), with two counts of carjacking (counts one and four), a violation of California Penal Code (Penal Code) § 215(a), two counts of first degree robbery (counts two and six), a violation of Penal Code § 211, attempted kidnaping (count three), a violation of Penal Code

§§ 207(a) and 664, one count of kidnaping for robbery (count five), a violation of Penal Code § 209(b)(1), and one count of kidnaping (count seven), a violation of Penal Code § 207(a).  (Lodgment No. 1, vol. 1 at 168-71.)  The information also had a number of allegations.  As to counts one, two and three, the information alleged Gray had personally discharged a firearm, within the meaning of Penal Code § 12022.53(c).  As to counts four, five, six and seven, the information alleged Gray had personally used a firearm, within the meaning of Penal Code § 12022.53(b).  As to counts two and six, the information alleged that the victim of the robbery was "an operator of a vehicle used for the transportation of persons for hire," within the meaning of Penal Code § 212.5(a).  Finally, as to all counts, it was alleged that Gray was armed with a firearm, within the meaning of Penal Code § 12022(a)(1).  (*Id.*)

Following a jury trial, Gray was convicted on all counts.  (Lodgment No. 2, vol. 2 at 250-58.)  The jury also found all of the allegations to be true.  (*Id.*)  Gray was sentenced to an indeterminate term of life with the possibility of parole plus a determinate term of thirty-nine years in prison.  (Lodgment No 2, vol. 2 at 278-81.)

Gray appealed his convictions to the California Court of Appeal.  The court affirmed all but one of Gray's convictions.  The court reversed Gray's conviction for kidnaping Maraiyesa in count seven because it was a lesser included offense to Gray's conviction for kidnaping Maraiyesa in count six.  (*See* Lodgment Nos. 3-6.)  Gray then filed a petition for review in the California Supreme Court.  (Lodgment No. 7.)  The California Supreme Court denied the petition for review without citation of authority.  (Lodgment No. 8.)

On April 8, 2009, Gray filed a petition for writ of habeas pursuant to 28 U.S.C. § 2254 in this Court.  (ECF No. 1.)  After that Petition was dismissed for failing to name a proper respondent, he filed a First Amended Petition on June 10, 2009.  (ECF Nos. 2, 6.)  That Petition was also dismissed because it was not complete within itself as required by Local Rule 15.1.  (ECF No. 9.)  Gray filed a Second Amended Petition on August 5, 2009, which is the operative pleading in this case.  (ECF No. 12.)

Respondent filed a motion to dismiss on December 17, 2009, which argued that claims three and six of Gray's petition were unexhausted.  (ECF No. 17, 17-1.)  In response, Gray filed a motion which the Court construed as a motion for leave to file a motion for stay and abeyance; the Court granted the

1  motion.  (ECF No. 19.)

2      Gray filed his motion for stay and abeyance on March 15, 2010.  (ECF No. 20.)  The District

3  Judge subsequently denied Respondent's motion to dismiss without prejudice to refiling at a later time,

4  and the undersigned Magistrate Judge issued a Report and Recommendation (R&R) recommending the

5  motion for stay be denied on October 27, 2010.  (ECF Nos. 30, 32.)  The R&R was adopted on

6  December 2, 2010.  (ECF No. 33.)  Respondent filed an Answer on July 29, 2011.  (ECF No. 44.)  Gray

7  filed a Traverse on August 30, 2011.  (ECF No. 46.)

8  **IV.    DISCUSSION**

9         A.    *Standard of Review*

10      This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act

11  of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will

12  not be granted with respect to any claim adjudicated on the merits by the state court unless that

13  adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of

14  clearly established federal law; or (2) resulted in a decision that was based on an unreasonable

15  determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C.

16  § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal

17  court is not called upon to decide whether it agrees with the state court's determination; rather, the court

18  applies an extraordinarily deferential review, inquiring only whether the state court's decision was

19  objectively unreasonable.  *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d

20  872, 877 (9th Cir. 2004).  Additionally, the state court's factual determinations are presumed correct,

21  and Gray carries the burden of rebutting this presumption with "clear and convincing evidence."  28

22  U.S.C.A. § 2254(e)(1) (West 2006).

23      A federal habeas court may grant relief under the "contrary to" clause if the state court applied

24  a rule different from the governing law set forth in Supreme Court cases, or if it decided a case

25  differently than the Supreme Court on a set of materially indistinguishable facts.  *Bell v. Cone*, 535 U.S.

26  685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state

27  court correctly identified the governing legal principle from Supreme Court decisions but unreasonably

28  applied those decisions to the facts of a particular case.  *Id.*  Additionally, the "unreasonable application"

clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B.    *Analysis*

Gray alleges six claims in his petition: (1) there was insufficient evidence presented to support his convictions for carjacking, robbery and attempted kidnapping of victim Allaso, as charged in counts one through three; (2) his federal due process and fair trial rights were violated by the trial court's failure to give a lesser included offense instruction for kidnaping with regard to count five, which alleged Gray kidnaped Maraiyesa for robbery; (3) his convictions for kidnaping Maraiyesa in count seven and robbery of Maraiyesa in count six should be reversed because they are lesser included offenses of kidnaping for robbery of Maraiyesa, for which he was convicted in count five; (4) the abstract of judgment should be altered to reflect the judge's oral pronouncement at sentencing; (5) the imposition of the upper term for count one violated Gray's Sixth Amendment rights because it was based on facts not found by a jury beyond a reasonable doubt, in violation of *Cunningham v. California*, 549 U.S. 270 (2007); and (6) the firearm enhancement found true by the jury should be stricken. (Pet. at 6-7, ECF No. 12.)

1    Respondent counters that, as to claims one, two, four and five, the state court's denial of the

2    claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court

3    law.  (Answer at 2-3, ECF No. 44; Mem. of P. & A. Supp. Answer at 16-22, 23-27, ECF No. 44-1.)  As

4    to claims three and six, Respondent contends they are both unexhausted and meritless.  (Answer at 2-3,

5    ECF No. 44; Mem. of P. & A. Supp. Answer at 23. 27-28, ECF No. 44-1.)

6        1.  *Insufficiency of Evidence*

7    Gray contends there was insufficient evidence presented to support his convictions for carjacking,

8    robbery and attempted kidnaping of victim Allaso, as charged in counts one through three, and the jury's

9    true findings that he personally discharged a firearm during the commission of those crimes.  (Pet. at 6,

10   8, ECF No. 12; Traverse at 2, 13-17, ECF No. 46.)  Specifically, Gray argues that the only evidence

11   connecting him to the crimes against Allaso was two of his fingerprints found on the outside of Allaso's

12   cab.  (Pet. at 6, ECF No. 12; Traverse at 15, ECF No. 46.)  He notes that Allaso was unable to identify

13   him as one of the perpetrators of the crimes, and that he could have left the fingerprints on the cab at any

14   time.  (Pet. at 6, ECF No. 12; Traverse at 13-17, ECF No. 46.)  Respondent contends the state court's

15   denial of the claim is neither contrary to, nor an unreasonable application of, clearly established Supreme

16   Court law.  (Answer at 2-3, ECF No. 44; Mem. of P. & A. Supp. Answer at 16-20, ECF No. 44-1.)

17   Gray raised this claim in the petition for review he filed in the California Supreme Court.

18   (Lodgment No. 7.)  That court denied the petition without citation of authority.  (Lodgment No. 8.)

19   Accordingly, this Court must "look through" to the state appellate court's opinion as the basis for its

20   analysis.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

21       1.  *Legal standards*

22       In determining the sufficiency of the evidence to support a conviction, "the
         relevant question is whether, after viewing the evidence in the light most favorable to the

23       prosecution, any rational trier of fact could have found the essential elements of the crime
         beyond a reasonable doubt."  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319, italics

24       omitted).  "[T]he court must review the whole record in the light most favorable to the
         judgment below to determine whether it discloses substantial evidence — that is,

25       evidence which is reasonable, credible, and of solid value — such that a reasonable trier
         of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson*

26       (1980) 26 Cal.3d 557, 578.)  "Circumstantial evidence may constitute substantial
         evidence of guilt."  (*People v. Catlin* (2001) 26 Cal.4th 81, 142.)

27

28   / / /

2. *Analysis*

Gray contends that because Allaso was not able to identify Gray either in the photographic lineups that were shown to Allaso after the incident or at trial, the "sum total of the People's evidence was that two of [Gray's] fingerprints were lifted from Allaso's cab out of a total of 29 prints that were collected." Gray further argues that the fingerprint evidence, alone, is insufficient as a matter of law to prove that Gray committed the charged offenses. According to Gray, there is no evidence negating the possibility that he may have left his fingerprints on Allaso's cab sometime other than during the commission of these crimes and thus, the fingerprint evidence is insufficient to prove his guilt. Gray asserts, "While fingerprint evidence is certainly strong evidence of the identity of the person who left the fingerprint, such evidence is not itself sufficient to prove guilt beyond a reasonable doubt where the defendant concedes that the fingerprints were his, but contests that they were left during the commission of the crime."

Although Gray suggests that the prosecution was required "to establish beyond a reasonable doubt that the fingerprints were left during the crime," Gray fails to acknowledge the overwhelming circumstantial evidence tying him to the crimes against Allaso.

Gray concedes that prints from his left ring finger and right thumb were found on the exterior of the front passenger side door of Allaso's cab. A detective testified that Gray had not worked for or leased a car from Yellow Cab, and Allaso testified that he washed his car at least one a week. This is evidence from which the jury could have inferred that Gray touched Allaso's cab and left his fingerprints on the cab during a fairly narrow window of time, probably less than, and certainly no longer than, within a week of the crimes. In addition, Allaso testified that the "short" man had entered the cab through the front passenger side door, the same door where Gray's prints were found.

The striking similarities in the manner in which the crimes against Allaso and those against Maraiyesa were committed and the relationship between the two sets of crimes, both in terms of location and time, provide strong circumstantial evidence that the crimes were perpetrated by the same offenders. Two men, both African-American, robbed Allaso approximately two hours before two African-American men robbed Maraiyesa. Both crimes began in the North Park area, and both victims were driving Yellow Cab taxis. Allaso and Maraiyesa both described one perpetrator as "short" or "shorter" and the other as "tall" or "taller." The shorter man prepaid Allaso and got into the front passenger seat of the cab, while the taller man sat in the back seat. The shorter man pulled out a gun and forced Allaso to give the shorter man money from his pockets while the taller man grabbed Allaso around the neck from the backseat. The shorter man ordered Allaso out of the cab and told him to get into the trunk of his cab.

A nearly identical scenario occurred a short time later with respect to Maraiyesa, and Maraiyesa identified Gray as the shorter of the two men who robbed and kidnapped him. During the incident involving Maraiyesa, Gray got into the front passenger seat of Maraiyesa's cab and offered Maraiyesa $20 as prepayment for the ride. The taller man got into the backseat. Gray pointed a gun at Maraiyesa and ordered him to give Gray his money and possessions while the taller man held Maraiyesa by the neck from the backseat. Gray ordered Maraiyesa out of the cab and instructed him to get into the trunk. Police found Gray's fingerprints on Maraiyesa's cab, and his face was captured by a security camera as he used Maraiyesa's ATM card to withdraw money from Maraiyesa's account.

///

1
2

> Gray was found guilty of committing the crimes involving Maraiyesa, and he does not challenge the sufficiency of the evidence as to those convictions.

3

> The strong evidence of Gray's guilt as to the crimes committed against Maraiyesa, together with the evidence that the circumstances of the crimes against Allaso were virtually identical to the circumstances of the crimes against Maraiyesa, and the fact that both occurred on the same night in the same area of the city, constitutes sufficient circumstantial evidence of Gray's guilt as to the crimes against Allaso. The addition of the fingerprint evidence simply strengthens the case that Gray was the perpetrator of the crimes against Allaso. Viewing the evidence in the light most favorable to the prosecution, any rational juror could have found beyond a reasonable doubt the elements of the crimes charged in counts 1, 2, and 3, as well as the corresponding firearm enhancements.

4
5
6
7

8  (Lodgment No. 6 at 10-13.)

9  As the state court properly noted, the clearly established Supreme Court law governing

10  sufficiency of the evidence questions is standard enunciated in *Jackson*, "whether, after viewing the

11  evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

12  essential elements of the crime beyond a reasonable doubt.'" *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th

13  Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In determining whether sufficient

14  evidence has been presented, this Court must accept the elements of the crime as defined by state law.

15  *See Jackson*, 443 U.S. at 324, n.16; *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993) (stating that

16  federal courts are "bound by a state court's construction of its own penal statutes").

17  Gray was charged in counts one, two and three with carjacking, robbery and attempted kidnaping.

18  As to each of the crimes, it was also alleged that he personally discharged a firearm and was personally

19  armed with a firearm. (Lodgment No. 1 at 168-72.) California defines the offense of carjacking as

20  follows:

21

> Carjacking is defined as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presences, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215.) The requisite intent — to deprive the possessor of possession — must exist before or during the use of force or fear. (20; Judicial Council of Cal. Crim. Jury Instns., CALCRIM No. 1650; cf *People v. Marshall* (1997) 15 Cal.4th 1, 34, 61 Cal.Rptr.2d 84, 931, P.2d. 262.)

22
23
24
25

26  *People v. Gomez*, 192 Cal. App. 4th 609, 618 (2011).

27  "Robbery is 'the felonious taking of personal property in the possession of another, from his

28  person or immediate presence, and against his will, accomplished by means of force or fear.'" *People*

1   *v. McKinnon*, 52 Cal. 4th 610, 661 (2011) (internal citations and quotation marks omitted.)  Kidnaping

2   is committed when a "person who forcibly, or by any other means of instilling fear, steals or takes, or

3   holds, detains, or arrests any person in this state, and carries the person into another country, state, or

4   county, or into another part of the same county . . . ." *People v. Bell*, 179 Cal. App. 4th 428, 435 (2009)

5   "To constitute an attempt, there must be (i) proof of specific intent to commit the target crime and (ii)

6   a direct, ineffectual act done toward its commission."  *People v. Swain*, 12 Cal. 4th 593, 604 (1996)

7   (citing 1 Witkin & Epstein, Cal. Criminal Law, § 143, p. 160.)  The Penal Code § 12022.53(c) allegation

8   requires proof that Gray personally discharged a firearm and that he intended to do so.  (Judicial Council

9   of California Criminal Jury Instructions [CALCRIM] No. 3148.)  The Penal Code § 12022(A)(1)

10  allegation requires proof that Gray either carried a firearm or had a firearm available for his use, and that

11  he knew he was doing so.  (CALCRIM No. 3115.)

12        There is no debate, and Gray does not contest, that there was sufficient evidence presented to

13  establish that the crimes against Allaso occurred.  Allaso's testimony, as discussed below, establishes

14  that an individual took Allaso's cab, with the intent to temporarily or permanently deprive him of it, by

15  means of force or fear (carjacking).  It also establishes that an individual took Allaso's personal property

16  by means of force or fear (robbery) and that he attempted to carry Allaso to another place by means of

17  force or fear when he ordered him into the trunk (attempted kidnaping).  Finally, Allaso's testimony

18  established a person carried and personally discharged a firearm.  What Gray does contest is the

19  sufficiency of the evidence presented to prove that he was the perpetrator of those crimes.  As Gray

20  notes, the only direct evidence tying him to the crimes against Allaso was the discovery of two of his

21  fingerprints on the exterior passenger door of Allaso's cab.  As the state court properly reasoned,

22  however, there was substantial circumstantial evidence supporting the jury's conclusion that he was

23  individual who committed the crimes.

24        Allaso testified that two African American men hailed his cab in the North Park area at about

25  2:00 a.m. on September 8, 2004.  (Lodgment No. 13, vol. 5 at 336-42.)  One was shorter than the other.

26  (*Id.* at 342.)  Maraiyesa testified that two African American men hailed his cab in the North Park area

27  at about 3:00 a.m. on September 8, 2004.  (Lodgment No. 12, vol. 4 at 214-15.)  One was shorter than

28  the other; the taller individual got into the back seat and the shorter individual got into the front

1    passenger seat. (*Id.* at 214-16.)  Allaso testified the men directed him to a park off of Adams Avenue.

2    Once there, one of the individuals in the back seat grabbed him by the neck in a "choke hold" while the

3    other got out of the cab, reentered the cab and sat in the front passenger seat. (Lodgment No. 13, vol.

4    5 at 341-42.)  The man pulled out a gun and demanded money from Allaso. (*Id.* at 342.)  Maraiyesa

5    testified the men directed him to a park in La Mesa. (Lodgment No. 12, vol. 4 at 217.)  The man in the

6    back seat then grabbed Maraiyesa by the throat while the man in the front seat pulled out a gun and

7    demanded money. (*Id.* at 222.)  Once Allaso gave the shorter man his money, the man told him to get

8    out of the cab, opened the trunk, and told Allaso to get in.  Allaso refused. (Lodgment No. 13, vol. 5 at

9    343-45, 347-48.)  The shorter man gave the taller man the keys to the cab and the taller man began

10   driving the cab away. (*Id.* at 347-48.)  The shorter man punched Allaso, took his wallet, shot at him then

11   ran after the cab. (*Id.* at 348.)  Maraiyesa testified that once he gave the shorter man the money, the

12   shorter man told him to get out of the cab, then ordered him to get into the trunk. (Lodgment No. 12,

13   vol. 4 at 226.)  Maraiyesa complied, and was driven around for a while.  At one point the men asked

14   Maraiyesa for his PIN number for this ATM card and withdrew money from his bank accounts. (*Id.* at

15   228-29.)  Allaso could not identify Gray as one of the individuals who robbed him. (Lodgment No. 132,

16   vol. 5 at 337.)  Maraiyesa identified Gray as the shorter of the two individuals who committed the crimes

17   against him. (*Id.* 217.)

18        Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could

19   have concluded the crimes committed against Allaso and the crimes committed against Maraiyesa were

20   committed by the same person. *See Juan H.*, 408 F.3d at 1275.  The crimes were nearly identical,

21   Maraiyesa and Allaso gave similar descriptions of the perpetrators and the crimes occurred in the same

22   area of San Diego within two hours of each other.  Maraiyesa identified Gray as the individual who

23   pulled the gun on him, took his money and locked him in the trunk.  This evidence, coupled with Gray's

24   fingerprints on the exterior passenger door of Allaso's cab, which corroborates Allaso's testimony, could

25   lead a rational trier of fact to conclude Gray committed the crimes against Allaso.  Accordingly, the

26   Court concludes the state court's denial of this claim was neither contrary to, nor an unreasonable

27   application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.  Gray is not

28   entitled to relief as to this claim.

2. *Failure to Instruct on Lesser Included Offense*

Gray next argues that the state court's failure to instruct the jury on simple kidnaping as a lesser included offense of kidnaping for robbery violated his due process rights. (Pet. at 6, 9, ECF No. 12; Traverse at 18-22, ECF No. 46.) Respondent counters that this claim is not cognizable on federal habeas review because it does not involve a question of federal law. (Answer at 2-3, ECF No. 44; Mem. of P. & A. Supp. Answer at 20-22, ECF No. 44-1.) Respondent also argues that any federal claim that is raised by ground two is barred by *Teague v. Lane*, 489 U.S. 288 (1989) because it would involve the application of a new rule of federal constitutional law. (Mem. of P. & A. Supp. Answer at 22, ECF No. 44-1.) In the alternative, Respondent argues the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (*Id.*)

Gray raised this claim on direct appeal in the petition for review he filed in the California Supreme Court. (Lodgment No. 7.) That court denied the petition without citation of authority. (Lodgment No. 8.) Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for its analysis. The state appellate court resolved this claim as follows:

> Gray contends that the trial court erred in failing to instruct the jury that simple kidnaping (§ 207), as charged in count 7, was a lesser included offense of the charged crime of kidnaping for robbery, as charged in count 5.
>
> 1. *Background*
>
> During closing arguments, the prosecutor stated,
>
>> "Count number 5 they kidnap Mr. Maraiyesa. Because after locking him into the trunk with the intent to commit a robbery, which they started inside the cab and which they continue until they use the ATM, they take him away from the scene of the crime. [¶] . . .[¶] Count 7 essentially charges the same conduct as the kidnapping for purposes of robbery except it's just simple kidnapping. It doesn't require that the kidnapping be for the purposes of robbery. [¶] And although it may seem strange that the charge covers conduct that is essentially the same, you['re] asked to decide each count independently, and each count can be based in part on evidence that you've used to find other counts true. And it's for the judge to sort that out if there is any issue down the road."
>
> The trial court instructed the jury on the charged crime of kidnapping for robbery in count 5. The court did not provide an instruction for the lesser included offense of kidnapping with respect to that particular count. However, the court did instruct the jury on the crime of simple kidnapping as charged in count 7.

2. *Analysis*

As we concluded in Section III.B., *ante*, Gray is correct that kidnapping is a lesser included offense of the crime of kidnapping for robbery. (See *People v. Jackson* (1998) 66 Cal.App.4th 182, 189.)  The trial court has a sua sponte duty to instruct the jury on a lesser included offense "whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present." (*People v. Lewis* (2001) 25 Cal.4th 610, 645.)  Gray acknowledges that the trial court did instruct the jury on the offense of kidnapping, as related to the charge in count 7, but contends that the jury "was not separately instructed that simple kidnapping in count 7 was a lesser included offense of kidnapping for robbery in count 5."  According to Gray, this was the court's error.

Gray cites no authority for the specific proposition that the jury must be told that a separately charged offense is a "lesser included offense" of another offense.  Rather, he simply recites the evidence from which he contends, "the jury could have legitimately found appellant guilty of the lesser included offense of simple kidnapping alone, not aggravated kidnapping."  However, as Gray must acknowledge, not only did the trial court instruct the jury on the lesser included offense of simple kidnapping (as charged in count 7), but the jury found him guilty of *both* simple kidnapping and kidnapping for robbery, based on the same conduct.  Gray's argument thus appears meritless.

To the extent that Gray may be attempting to argue that the trial court should have instructed the jury that it had the option of convicting him on either the greater or the lesser included offense, we will address the issue, despite Gray's failure to specifically articulate this argument.  Under this theory, pursuant to *Stone v. Superior Court* (1982) 31 Cal.3d 503, 519 and *People v. Kurtzman* (1988) 46 Cal.3d 322, 329, the trial court has a duty to instruct the jury that it may consider and/or discuss a lesser included offense before returning a verdict on the greater, but that it may not return a verdict on the lesser offense before returning a verdict on the greater.  There exist standard instructions regarding this issue, including CALJIC No. 17.12, [footnote omitted], which instructs the jury that it must first determine whether the defendant is guilty or not guilty of the greater offense before reaching a verdict as to any lesser included offenses, and Judicial Council of California Criminal Jury Instructions (CALCRIM) No. 3519, [footnote omitted], which provides similar instruction in situations where the lesser included and greater offenses have been separately charged.

It appears that the trial court did not provide the jury any instruction akin to either of these standard instructions.  We conclude that even if the trial court should have instructed the jury that it could consider the questions regarding kidnapping for robbery and simple kidnapping in whatever order it chose, and that it had the option of choosing guilt as to one of the two offenses, Gray has suffered no prejudice as a result of the court's failure to do so.

It is clear that a complete failure on the part of the trial court "to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and thus is subject only to state standards of reversibility.  (*People v. Breverman* (1998) 19 Cal.4th 142, 165.)  "[S]uch misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome."  (*Ibid.*, citing Cal. Const., art. IV, § 13 and *People v. Watson* (1956) 46 Cal.2d 818, 836.)  There is no reason that the same standard should not apply in situations in which the error complained of, like the one here, involves something less than a complete failure to instruct sua sponte on a lesser included offense.  We therefore apply the *Watson* standard of prejudice to determine whether the trial court's failure to instruct the jury that it had the option of choosing between convicting on the greater offense or the lesser offense harmed Gray.

1
2
3
4
5
6

      Under this standard, Gray suffered no prejudice.  The jury convicted him of both the greater and the lesser offenses.  There is no reasonable likelihood that the jury would have reached a different verdict on the greater offense if the trial court had instructed the jury that it could choose between convicting Gray of kidnapping for robbery *or* the lesser included offense of simple kidnapping.  Although the jury might not have reached the issue of guilt on the simple kidnapping conviction if the trial court had instructed the jury that a finding of guilt on the lesser (kidnapping), this is of no consequence because we are reversing Gray's conviction for simple kidnapping on the ground that it is a lesser included offense of the crime of kidnapping for robbery.  Gray has thus suffered no prejudice from the trial court's instructions with regard to the greater and lesser included kidnapping offenses.

7
(Lodgment No. 6 at 16-20.)

8
      There is no clearly established Supreme Court law which requires a trial court to instruct on a

9
lesser included offense in non-capital cases.  *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000);

10
*Turner v. Marshall*, 63 Fl.3d 807, 819 (9th Cir. 1995) (overruled on other grounds by *Tolbert v. Page*,

11
182 F.3d 677, 685 (9th Cir. 1999) (en banc)).  Gray cannot obtain federal habeas relief on this claim in

12
the absence of clearly established Supreme Court law.  *See Carey v. Musladin*, 549 U.S. 70, 77 (2006).

13
      In the context of a trial court's failure to give an instruction on a theory of the defense, however,

14
the Ninth Circuit has noted that "[u]nder the Due Process Clause of the Fourteenth Amendment, criminal

15
prosecutions must comport with prevailing notions of fundamental fairness . . . [which] require that

16
criminal defendants be afforded a meaningful opportunity to present a complete defense." *Bradley v.*

17
*Duncan*, 315 F.3d 1091, 1098-99 (9th Cir. 2002) (citing *Mathews v. United States*, 485 U.S. 58, 63

18
(1988) and *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  Thus, a "'[f]ailure to instruct on the

19
defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes

20
it applicable.'" *Clark v. Brown*, 450 F.3d 898, 904-05 (9th Cir. 2006) (quoting *Beardslee v. Woodford*,

21
358 F.3d 560, 577 (9th Cir. 2004)); *Solis*, 219 F.3d at 929; *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th

22
Cir. 1984) (stating that "[a] criminal defendant is entitled to adequate instructions on his or her theory

23
of defense") (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976).)  However, the Supreme Court

24
has recognized "that due process requires that a lesser included offense instruction be given *only* when

25
the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982) (emphasis in

26
original).

27
      Here, as Respondent has pointed out, Gray's defense counsel did contend in closing argument

28
that a separate robbery and kidnaping occurred and not a kidnaping for robbery.  (Lodgment No. 14, vol.

6 at 602.)  But he did so in the context of Gray's overarching defense which was that, although Maraiyesa was the victim of a kidnapping and robbery, Gray was not the perpetrator.  (Lodgment No. 14, vol. 6 at 601-07.)  Counsel portrayed Maraiyesa's identification of Gray as shaky, noting that Maraiyesa identified four possible suspects in the photographic lineup conducted on November 18, more than a month after the crimes.  (*Id.* at 603.)  Counsel also pointed out that two of the photos he identified as depicting perpetrators of the crimes were of the same individual, and the remaining two were "remarkably different in look," which, he argued, suggested that Maraiyesa's identification of Gray was not very solid.  (*Id.* at 604.)  In addition, defense counsel noted that the fingerprint evidence allegedly connecting Gray to Maraiyesa's cab was also tainted.  The fingerprint expert identified the cab he took the fingerprints from as cab number 120; Maraiyesa's cab number was 240.  (*Id.* at 604-05.)  Defense counsel also reminded the jury that Detective Bojorquez said that the San Diego Police Department maintains a central area where impounded cars, including Maraiyesa's cab, were stored.  (*Id.* at 605.)  The discrepancy in the cab numbers, defense counsel argued, suggested that the fingerprints identified as belonging to Gray came not from Maraiyesa's cab but from some other cab that had been impounded by San Diego Police.  (*Id.* at 605-06.)  Thus, the thrust of Gray's defense was not that he committed a simple kidnaping and not a kidnaping for robbery, but rather that he was not guilty of the crimes against Maraiyesa because he had been misidentified as the perpetrator.  Accordingly, the Court concludes the failure to instruct on simple kidnaping with regard to the crimes against Maraiyesa did not deprive Gray of an instruction on the theory of his defense.  *See Clark*, 450 F.3d at 904-05.

Even assuming the state court erred in failing to give a specific instruction that the jury could convict Gray of the lesser included offense of simple kidnaping with respect to count five, Gray suffered no prejudice.  Jury instruction errors are subject to the harmless error analysis of *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  The jury's conclusion that Gray was guilty of both kidnaping Maraiyesa for robbery (count five) and simple kidnaping of Maraiyesa (count seven) belies any argument that the jury would have acquitted Gray of kidnaping for robbery had they been given the opportunity.  As the state court noted, given that the jury convicted Gray of both the lesser and greater offenses, "[t]here is no reasonable likelihood that the jury would have reached a different verdict on the greater offense if the

/ / /

1   trial court had instructed the jury that it could choose between convicting Gray of the kidnapping for

2   robbery *or* the lesser offense of simple kidnapping."  (Lodgment No. 6 at 20.)

3         For all the foregoing reasons, the state court's denial of this claim was neither contrary to, nor

4   an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.

5   Gray is not entitled to relief as to this claim.

6         3.  *Whether Robbery and Kidnaping Are Lesser Included Offenses of Kidnaping for Robbery*

7         In claim three, Gray contends he was improperly convicted of kidnaping for robbery (count five),

8   robbery (count six) and kidnaping (count seven) because kidnaping and robbery are lesser included

9   offenses of kidnaping for robbery.  (Pet. at 6, ECF No. 12; Traverse at 23-27, ECF No. 46.)  As to any

10  claim that Gray's kidnaping conviction in count seven should be reversed, this Court notes the state

11  appellate court overturned that conviction on direct appeal.  (*See* Lodgment No. 6 at 13-14.)  As to

12  Gray's robbery conviction in count six, Respondent has argued, and this Court has already concluded,

13  the claim is unexhausted.  (*See* Order Adopting Report and Recommendation and Denying Stay, *Gray*

14  *v. Ryan*, 09cv0709 BEN (CAB), ECF  No. 33; Report and Recommendation for Order Denying

15  Petitioner's Motion for Stay and Abeyance, *Gray v. Ryan*, 11cv0709 BEN (CAB), ECF No. 32.)  In the

16  Report and Recommendation (R&R), the Court also concluded that this claim was not cognizable on

17  federal habeas review because it concerned solely a question of state law in finding that robbery is not

18  a lesser included offense of kidnaping for robbery under California law.  *See Estelle v. McGuire*, 502

19  U.S. 62, 67-68 (1991), 28 U.S.C. § 2254(a); *see also People v. Lewis II*, 43 Cal. 4th 415, 518-19 (2008)

20  (holding that robbery is not a lesser included offense of kidnaping for robbery).  This Court may deny

21  a petition which contains an unexhausted claim if it is "perfectly clear that the applicant does not raise

22  even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).  Accordingly,

23  the Court recommends this claim be **DENIED**.

24        4.  *Whether the Abstract of Judgment Should Be Corrected*

25        In claim four, Gary argues the abstract of judgment in his case should be corrected to reflect the

26  judge's oral pronouncement of sentence, which he claims stays the sentence in counts six and seven

27  pursuant to Penal Code § 654.  (Pet. at 6; ECF No. 12; Traverse at 23-27, ECF No. 46.)  Respondent

28  / / /

counters that this claim does not state a federal habeas corpus claim because it involves only the interpretation of state sentencing law.  (Mem. of P. & A. Supp. Answer at 23-24, ECF No. 44-1)

Gray raised this claim on direct appeal in the petition for review he filed in the California Supreme Court.  (Lodgment No. 7.)  That court denied the petition without citation of authority.  (Lodgment No. 8.)  Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for its analysis.  The state appellate court denied the claim, finding as follows:

> First, contrary to Gray's argument, the abstract of judgment need not be corrected in the manner Gray requests because the trial court did not stay the sentence on count 6 in its oral pronouncement of sentence.  In imposing Gray's sentence, the trial court stated with regard to counts 6 and 7:

> "As to count 6, the robbery of the taxicab, the upper term, again will be 6 years, plus 10 for the 12022.53(b).  Again, that will be concurrent to the determinate counts.

> "The 1 year 12022(a)(1) will be stayed.

> "And then, finally, count 7, the upper term of 8 years will be imposed for the reasons I've previously stated.  Plus 10 years for the PC 12022.53(b).

> "And the 12022(a)(1) will be 1 year.

> "Now, all those terms will be stayed pursuant to Penal Code section 654 because they're really part and parcel and really a lesser included offense of count 5."

> The court calculated an aggregate sentence of 29 years, plus life with parole, plus an additional 10 years.  Gary asserts that in stating, "Now, *all those terms will be stayed* pursuant to Penal Code section 654 because they're really part and parcel and really a less-included offense of count 5" (italics added), the trial court intended to include all of the terms for *both* counts 6 and 7.  We read the court's statement differently.  Specifically, we conclude that in saying, "all those terms," the trial court was referring to all of the terms related to count 7, the 10-year term for the enhancement pursuant to section 12022.53, subdivision (b), and the additional one-year term for the enhancement pursuant to section 12022, subdivision (a)(1).

> The fact that the court ordered the six-year term, plus the 10-year term for the enhancement pursuant to section 12022.53, subdivision (b) to run concurrently with the determinate counts already imposed and did not do the same with the terms imposed on count 7 reinforces our conclusion that the trial court was not referring to the sentences imposed on count 6 when the court ordered some set of terms stayed.  The court did not similarly order the terms for count 7 to run concurrently with or consecutively to the other counts, instead choosing to stay the counts pursuant to section 654.  We therefore conclude that the abstract of judgment correctly reflects the court's oral pronouncement of judgment.

/ / /

The trial court's decision not to stay Gray's sentences on count 6 and the corresponding enhancements was appropriate given the fact that the jury could have found Gray guilty of count 6 (robbery) based on a different set of facts than those underlying count 5. Section 654 "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) A trial court's determination that a defendant holds multiple criminal objectives will be upheld on appeal if it is supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

To determine whether a course of conduct is indivisible, courts consider the intent and objective of the defendant. If all of the criminal acts were incident to a single criminal objective, then the court may impose punishment only as to one of the offenses committed. (*People v. Beamon* (1973) 8 Cal.3d 625, 636-637.) A court may impose separate punishments for offenses that have similar but consecutive and different objectives, or simultaneous but separate objective, however. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211-1212.)

In this case, the prosecutor argued that the robbery alleged in count 6 occurred when Gray took property from Maraiyesa at gunpoint while they were inside the cab. There was substantial evidence to support a finding of guilt on the robbery charge based on this conduct. The kidnapping occurred after this original robbery. The court thus did not err in concluding that Gray had a separate and additional criminal objective when, after robbing Maraiyesa of the property he had on his person, Gray kidnapped Maraiyesa, required Maraiyesa to give him the PIN for Maraiyesa's check card, and ultimately took money out of Maraiyesa's bank account. There is thus sufficient evidence to support the trial court's implicit finding that Gray was guilty of two separately punishable acts in counts 5 and 6.

(Lodgment No. 6 at 21-22.)

As Respondent correctly argues, whether the state appellate court properly applied California's rule that the oral pronouncement of sentence controls, *see People v. Zackery*, 147 Cal. App. 4th 380, 386 (2007), or California's prohibition against multiple punishment for the commission of "a single act or indivisible course of conduct," *see* Cal. Penal Code § 654 (West 2011), are solely matters of state law. As previously noted, claims that involve the application of a state's own laws are not cognizable on federal habeas review. *Estelle*, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a).

To the extent Gray's claim is that the erroneous application of state sentencing law violated his federal constitutional rights, as Respondent notes, the question is whether Gray's sentence is "so arbitrary or capricious as to constitute an independent due process . . . violation." *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). Gray's claim that the state court improperly applied state law does not rise to the level of a federal due process violation. He merely disagrees with the state court's interpretation of state law.

/ / /

1        Gray is not entitled to relief as to this claim because it does not present a federal constitutional

2   question.  Alternatively, the state court's denial of the claim was neither contrary to, nor an unreasonable

3   application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.

4        5.  *Imposition of the Aggravated Term*

5        Gray argues the state court's imposition of the aggravated prison term for his carjacking

6   conviction (count one) violated his federal constitutional right to have every fact which elevates the

7   maximum prison term to which a defendant can be sentenced be found by a jury beyond a reasonable

8   doubt, in violation of the principles outlined in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and

9   *Cunningham v. California*, 549 U.S. 270, 291 (2007).  (Pet. at 6, ECF No. 12; Traverse at 28-37, ECF

10  No. 46.)  Respondent counters that Gray's sentence does not afoul of this requirement because the state

11  trial judge based the imposition of the upper term on facts found by the jury, namely the facts

12  surrounding Gray's conviction for the attempted kidnaping of Allaso.  (Mem. of P. & A. Supp. Answer

13  at 24-27, ECF No. 44-1.)

14       Gray raised this claim in the petition for review he filed in the California Supreme Court.

15  (Lodgment No. 7.)  That court denied the petition without citation of authority.  (Lodgment No. 8.)

16  Accordingly, this Court must "look through" to the California Appellate Court opinion denying the claim

17  as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

18       1.  *Applicable Law*

19       In *Cunningham*, *supra*, 127 S.Ct. 856, the United States Supreme Court
    addressed the constitutionality of California's determinate sentencing law (DSL) as

20  interpreted by the California Supreme Court in *People v. Black* (2005) 35 Cal.4th 1238
    (*Black I*), certiorari granted, judgment vacated, and cause remanded sub nom. (*Black v.*

21  *California* (2007) __ U.S. __, 127 S.Ct. 1210.)  In *Black I*, the Supreme Court
    determined that "the judicial factfinding that occurs when a judge exercises discretion

22  to impose an upper term sentence or consecutive terms under California law does not
    implicate a defendant's Sixth Amendment right to a jury trial."  (*Black I*, *supra*, 35

23  Cal.4th at p. 1244.)  In *Cunningham*, the United States Supreme Court rejected the
    conclusion in *Black I*, and held that the imposition of an upper term sentence under

24  California's determinate sentencing law based on neither a prior conviction nor facts
    found by the jury or admitted by the defendant, violates the Sixth and Fourteenth

25  Amendments of the United States Constitution.  (*Cunningham*, *supra*, 127 S.Ct. at p.
    860.)

26       The *Cunningham* court reasoned:

27          "As this Court's decisions instruct, the Federal

28          Constitution's jury-trial guarantee proscribes a sentencing

scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) [*Apprendi*]; *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) [*Ring*]; *Blakely*[, *supra*,] 542 U.S. 296; 124 S.Ct. 2531; *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) [*Booker*]. '[T]he relevant "statutory maximum," 'this Court has clarified, 'is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.' *Blakely*, 542 U.S., at 303-304, 124 S.Ct. 2531 (emphasis in original)." (*Cunningham*, *supra*, 127 S.Ct. at p. 860.)

The United States Supreme Court reversed the defendant's upper term sentence, vacated the *Black I* decision, and remanded the matter to the California Supreme Court. (*Cunningham*, *supra*, 127 S.Ct. at p. 860.) [footnote omitted.] The California Supreme Court reconsidered the matter in light of *Cunningham* in *People v. Black* (2007) 41 Cal.4th 799 (*Black II*). In a related case, *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*), the Supreme Court addressed additional issues raised by the *Cunningham* decision. We conclude that under the holding in *Black II*, the trial court did not violate Gray's jury trial right in sentencing him to the upper term.

2. *Analysis*

The trial court relied on two aggravating factors to impose the upper term on count 1. With regard to its findings on the factors in aggravation, the court stated:

"Now as to count 1, looking at the circumstances of that offense, that offense involved you attempting to kidnap . . . .[¶] [¶] . . . Mr. Allaso. Mr. Allaso. And what is aggravating about that offense is the fact that this is a carjacking. So I mean in a normal carjacking one walks up and says give me your car, and they get the car and drive it away. [¶] Well, in this particular offense it's more aggravated . . .because there was an attempt to kidnap Mr. Allaso, and not just take his vehicle, but also kidnap him. That attempt was not completed, but that is something I can use to aggravate this offense. [¶] Since I'm not going to impose any extra time for the attempted kidnapping, I will — but I will use the facts of the attempted kidnapping to aggravate the charge. [¶] Another reason to aggravate the charge beyond the presumptive middle term of 7 years is that you do have the prior, although some judge in El Cajon, for reasons I do not comprehend, decided that should be a misdemeanor. You did — you were involved in a crime of violence where you used a weapon against a minor, apparently. And so that is also something I'm using to aggravate count 1. [¶] So I'm going to find that the aggravants outweigh the mitigants, and that the upper term is the appropriate term."

The California Supreme Court determined in *Black II* that the existence of "a single aggravating circumstance" that has been established in a manner consistent with the requirements of the Sixth Amendment renders a defendant eligible for the upper term, thus making "it lawful for the trial court to impose an upper term sentence." (*Black II*, *supra*, 41 Cal.4th at pp. 814-15.) According to the *Black II* court, "as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence

1   has been established in accordance with the requirements of *Apprendi* and its progeny,
2   any additional fact finding engaged in by the trial court in selecting the appropriate
    sentence among the three available options does not violate the defendant's right to jury
3   trial. (*Black II*, *supra*, 41 Cal.4th at p. 812.)

4          Here, the trial court relied on at least one aggravating circumstance that rendered
    Gray eligible for the upper term sentence. Specifically, a legally sufficient aggravating
5   circumstance exists by virtue of the jury's verdict convicting Gray of attempted
    kidnapping, for which the trial court imposed a concurrent sentence, even though the
6   court could have imposed a consecutive sentence. (See Cal. Rules of Court, rule
    4.421(a)(7) [aggravating factor includes fact that "[t]he defendant was convicted of other
7   crimes for which consecutive sentences could have been imposed but for which
    concurrent sentences are being imposed"].) The trial court thus relied on facts reflected
8   in the jury's verdict, in conformity with the requirements of the Sixth Amendment as
    announced in *Blakely* and *Cunningham*, in selecting the upper term.

9   (Lodgment No. 6 at 24-27.)

10          In a series of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme

11  Court declared that any fact, other than a prior conviction, that increases the sentence for a crime beyond

12  the statutory maximum must be proved beyond a reasonable doubt or admitted to by the defendant. *See*

13  *Cunningham v. California*, 549 U.S. 270, 274-75 (2007) (citing *Apprendi*, 530 U.S. 466) and *Blakely*

14  *v. Washington*, 542 U.S. 296, 303 (2004); *see also United States v. Booker*, 543 U.S. 220 (2005).

15  Consistent with what the state court noted, however, the Ninth Circuit has stated, however, that "if at

16  least one of the aggravating factors upon which the judge relied in sentencing . . . was established in a

17  manner consistent with the Sixth Amendment, [a] sentence does not violate the Constitution." *Butler*

18  *v. Curry*, 528 F.3d 624, 643 (9th Cir. 2008).

19          Rule 4.421 of the California Rules of Court governs the circumstances in aggravation which

20  justify an upper term. Specifically, California Rules of Court, Rules 4.421(a)(7) and (b)(1) state the

21  following is a circumstance in aggravation:

22          (a) Factors relating to the crime, whether or not charged or chargeable as
    enhancements include that:
23
                                        . . . .
24
            (7) The defendant was convicted of other crimes for which
25  consecutive sentences could have been imposed but for which concurrent
    sentences are being imposed.
26
                                        . . . .
27

28  ///

(b) Factors relating to the defendant include that:

    (1) The defendant has engaged in violent conduct that indicates a serious danger to society;

Cal. R. Ct. 4.421(a)(1) and (b) (1).

The jury found beyond a reasonable doubt that Gray attempted to kidnap Allaso when he ordered Allaso into the trunk of his cab. Thus, these aggravating factors, Cal. R. Ct. 4.421(a)(7) and (b)(1) were found in a manner consistent with *Cunningham*.[2] Gray's act of ordering Allaso into the trunk at gunpoint certainly qualifies as violent conduct which indicates a serious danger to society. Cal. R. Ct. 4.421(b)(1). In addition, the jury's guilty verdict on the attempted kidnaping count for which Gray received a concurrent sentence also establishes an aggravating factor in a manner consistent with *Cunningham*. Accordingly, there was no Sixth Amendment violation. *See Butler*, 528 F.3d at 643.

Moreover, even if the imposition of the aggravated term violated *Cunningham*, the error was harmless. *Cunningham* violations are subject to the harmless error analysis prescribed by *Brecht*, 507 U.S. at 637. *See Butler*, 528 F.3d at 648. *Brecht* requires the Court to determine whether "the error had a substantial and injurious effect on [Grays'] sentence." *Id.* (quoting *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001)). "Under that standard, we must grant relief if we are in 'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt." *Id.* (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). Given Gray's convictions for carjacking, robbery, attempted kidnaping, and kidnaping for robbery, as well as the weapons enhancements the jury found

---

    [2] *See* Cal. R. Ct. 4.425, "Criteria Affecting Concurrent or Consecutive Sentences," which states as follows:

Criteria affecting the decision to impose consecutive rather than concurrent sentences include:

(a) Criteria relating to crimes

Facts relating to the crimes, including whether or not:

    (1) The crimes and their objectives were predominantly independent of each other;
    (2) The crimes involved separate acts of violence or threats of violence; or
    (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.

Cal. R. Ct. 4.425(a)(1)- (3) (West 2011).

true, the Court is confident that a jury would have found the aggravating circumstances outlined in Cal. R. Ct. 4.421 in a manner consistent with *Cunningham* and the Sixth Amendment. *See Butler*, 528 F.3d at 648-49. The crimes of which Gray were convicted unequivocally "involved great violence [and the] threat of great bodily harm . . ." and were "violent conduct that indicates a serious danger to society." Cal. R. Ct. 4.421(a)(1), (b)(1). Accordingly, any *Cunningham* violation was harmless. *See Butler*, 528 F.3d at 643. Gray is not entitled to relief as to this claim. *Williams*, 529 U.S. at 412-13.

    6. *Whether the Firearm Enhancements Should Be Stricken*

    In claim six, Gray contends he was improperly sentenced for the Penal Code § 12022(a)(1) enhancements. This is because, Gray claims, pursuant to California Penal Code § 12022.53(f), the enhancement should have been stricken.[3] (Pet. at 7, ECF No. 12.) As with claim three, Respondent has argued, and the Court has already concluded, that this claim is unexhausted. (*See* Order Adopting Report and Recommendation and Denying Stay, *Gray v. Ryan*, 09cv0709 BEN (CAB), ECF No. 33; Report and Recommendation for Order Denying Petitioner's Motion for Stay and Abeyance, *Gray v. Ryan*, 11cv0709 BEN (CAB), ECF No. 32.) In the R&R recommending the denial of Gray's motion for stay and abeyance, the Court also concluded that this claim was not cognizable on federal habeas review because it concerned solely a question of state law in finding that Penal Code § 12022.53(f) did not preclude imposition a sentence for the § 12022(a)(1) conviction. *See Estelle*, 502 U.S. at 67-68; 28 U.S.C. § 2254(a); *see also People v. Gonzalez*, 43 Cal. 4th 1118, 1129-30 (2008) (holding that "section 12022.53 was enacted to ensure that defendants who use a gun remain in prison for the longest time possible and that the Legislature intended the trial court to stay, rather than strike, prohibited enhancements under section 12022.53"). This Court may deny a petition which contains an unexhausted claim if it is "perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). Accordingly, the Court recommends this claim be **DENIED**.

/ / /

/ / /

---

[3] California Penal Code § 12022.53(f) states, in pertinent part, that "[a]n enhancement involving a firearm specified in Section . . . 12022 . . . shall not be imposed on a person in addition to an enhancement imposed pursuant to this section." Cal. Penal Code § 12022.53(f).

**IV.      CONCLUSION**

The Court submits this Report and Recommendation to United States District Judge Roger T. Benitez under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** Petition for Writ of Habeas Corpus.

IT IS ORDERED that no later than **December 2, 2011,** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **December 16, 2011**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  November 3, 2011

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge